IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DANNY LEE HIATT                                                                                        PLAINTIFF

v.                                        CIVIL NO.        10-2102

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                     DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.     **Procedural Background:**

Pursuant to Title II of the Social Security Act, Danny Hiatt (Plaintiff) filed an application for a period of disability and disability insurance benefits on June 21, 2007. His application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing, and a hearing was held on September 18,2008, in Fort Smith, Arkansas, before an Administrative Law Judge (ALl). Plaintiff appeared and testified at the hearing as did Sarah Moore, a vocational expert. On November 19, 2008, the ALJ issued a decision denying all benefits to Plaintiff. (T, 64). The Appeals Council (AC) denied Plaintiffs request for review on May 28, 2010. (T. 1).

Consequently, the ALJ's decision of November 19, 2008, became the final decision of the Commissioner. On July 12, 2010, Plaintiff filed a complaint with this court for the purpose of obtaining judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. §405(g).

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

      The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    ALJ Decisions

      Plaintiff was born in 1958, has a seventh grade education and can communicate in English (Tr. 29, 58, 63, 98, 127). Plaintiff confirmed in his disability report that he could read and understand English and write more than his name in English (Tr. 127). Plaintiff's past relevant work was as a truck driver and the ALJ determined that the Plaintiff could not perform his past relevant work (Tr. 62).

The ALJ held that Plaintiff had a severe impairment related to degenerative disc disease, but he did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 57-59). The ALJ found that Plaintiff had mild restriction of activities of daily living; mild difficulty with social functioning; and mild difficulty maintaining concentration, persistence, or pace (Tr. 58). See 20 C.F.R. §§ 404.1520a and 416.920a. There were no episodes of decompensation (Tr. 58). The ALJ determined that Plaintiff had impairment-related exertional and nonexertional functional limitations that restricted Plaintiff to performing less than a full range of light work (Tr. 59, 63).

The ALJ held that Plaintiff retained the RFC to perform "unskilled, light work as defined in 20 CFR 404.1567(b) except that he can only occasionally stoop, crouch, climb ladders, ropes and scaffolds, kneel and crawl, that he can frequently climb stairs and ramps and that he can frequently push/pull with his bilateral upper extremities. In addition, the undersigned finds that the claimant is unable to engage in work that involves vibrations in the workplace or transactional interaction with the public." (T. 59).

**IV.   Discussion**:

After a through discussion of each of the Plaintiff's alleged impairments at step two the ALJ found that the Plaintiff did not have "severe impairments with regard to his allegations of disability due to a mental impairment, left elbow pain, stomach problems/ulcers and facial fractures with vision difficulties". (T. 59).

The Plaintiff does not dispute the ALJ's findings at step two concerning the Plaintiff's inability to prove any disability concerning his left elbow pain, stomach problems/ulcers and facial fractures with vision difficulties.  Proof of a disabling impairment must be supported by at

least some objective medical evidence. *See Moothart v. Bowen*, 934 F.2d 114, 116-17 (7th Cir.1991); *Marolf v. Sullivan* 981 F.2d 976, 978 (C.A.8 (Iowa),1992)*; Hathaway v. Astrue* 2011 WL 1435861, 7 (W.D.Ark.) (W.D.Ark.,2011).

**A. Mental Impairments:**

The Plaintiff contends, however, that the ALJ should have found a severe mental impairment at step two of the sequential evaluation. *See Plaintiff's Brief at 10-12*. At step two of the sequential evaluation process, the ALJ is to determine whether Plaintiffs impairments are severe, 20 C.F.R. §404.1520(c). The claimant has "the burden ... of showing ... that [s]he has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S. Ct. 2287, 2294 n. 5, 96 L. Ed.2d 119 (1987). *Riley v. Shalala* 18 F.3d 619, 621 (C.A.8 (Ark.),1994). If the impairments result in no more than minimal functional limitations, the impairments are not severe. *Pepper ex rel. Gardner v. Barnhart* 342 F.3d 853, 854 (C.A.8 (Mo.),2003); Social Security Ruling 96-3p.

The ALJ noted that Plaintiff had not seen a mental health specialist and he had never been hospitalized due to psychiatric symptoms (Tr. 58). In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. See *Id.*; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

The ALJ also noted that the Plaintiff responded well to drugs which were prescribed for his depression. Dr. Kale noted on April 14, 2006 that the Plaintiff's depressive disorder was

secondary to the chronic pain and he prescribed Cymbalta 60mg and Oxydone 5mg (T. 214). By May 18, 2006 Dr. Kale noted that the Plaintiff was tolerating the medication will without significant side effects. (T. 217). By June 15, 2006 Dr. Kale noted that the Plaintiff was "significantly" improved, that his mood was improved and stable, his affect was normal and appropriate and that the Plaintiff's had a positive and desirable response to the current therapy (T. 219). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004).

It is also significant that Dr. Kale noted in his record of June 15, 2006 that the Plaintiff was to return to the clinic within four weeks or as needed. There is no record that the Plaintiff either returned to the clinic for any additional treatment with Dr. Kale or sought any other mental health treatment or counseling. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

**B.  RFC:**

The ALJ held that Plaintiff had exertional and nonexertional functional limitations that restricted him to performing less than a full range of light work (Tr. 59). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ noted that Plaintiff was in a June 25, 2005, motor vehicle accident, and reported back pain (Tr. 60, 259). Review of the record reveals that x-rays, CT's, and MRIs have been unremarkable (Tr. 223, 260, 263, 265, 272, 273). Lumbar spine x-rays were negative (Tr. 224). A cervical spine CT revealed degenerative changes, but no fracture (Tr. 260). A cervical spine MRI revealed minimal transverse bulging at C3-4, and C4-5, but was otherwise normal (Tr. 272). An October 2005 lumbar spine MRI was normal (Tr. 273).

Stephen Carney, M.D., reported a July 5, 2005, impression of cervical strain and lumbar strain (Tr. 251). Dr. Carney reported in July 2005 that Plaintiff's neurological examination was grossly normal, with no focal deficits or other abnormalities (Tr. 250). Range of motion of all four extremities was within normal limits (Tr. 250).

Robert Kale, M.D., reported in June 2006 that Plaintiff was doing well on his current analgesic regimen and his mood was significantly improved (Tr. 212, 219-220). Dr. Kale recommended a pedometer and a 10,000 step walking program goal (Tr. 212, 219-220).

On January 9, 2006 Leslie France, a physical therapist, performed a Functional Capacity Evaluation on the Plaintiff. T. 274-284. Ms. France noted that the Plaintiff was not on any

narcotic pain medication and was controlling his pain with Tylenol and, on occasion, with narcotic pain medication. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).  Ms. France noted that the Plaintiff was independent with activities of daily living (T. 278), his gait was normal and his range of motion was within normal limits. (T. 280) Ms. France felt that he could engage in Medium Work (T. 274).

Treating physician Anthony L. Capocelli, M.D., opined in 2006 that Plaintiff had a 9 percent whole person impairment (Tr. 106, 289). Dr. Capocelli opined that Plaintiff was at maximum medical improvement.  Dr. Capocelli concurred with the FCE that had been performed on the Plaintiff that he could return to work as long as he did not lift more than 40 pounds. He also felt that the Plaintiff had been well treated with Zanaflex. [1] (Tr. 289).  The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

The ALJ considered the August 2007 consultative examination report from Tad Michael

---

[1] Zanaflex is a short-acting muscle relaxer. It works by blocking nerve impulses (pain sensations) that are sent to the brain.  See www.drugs.com (June 30, 2011).

Morgan, M.D. (Tr. 56, 61, 226-232). The opinion of a consultative examiner is evidence that must be considered, although it is not entitled to controlling weight. See 20 C.F.R. §§ 404.1527 and 416.927.  (Tr. 226). Plaintiff had full range of motion of his cervical spine and his lumbar spine flexion range of motion was zero to eighty degrees (zero to ninety degrees is normal) (Tr. 229). Straight -leg- raising was normal and Plaintiff had normal range of motion of his extremities (Tr. 229). Reflexes were normal and there was no muscle weakness, muscle atrophy, or sensory abnormality (Tr. 230). Gait and coordination were normal, and Plaintiff could walk on heel and toes, and squat and arise from a squatting position (Tr. 230). Dr. Morgan reported that there was no evidence of a serious mood disorder or psychosis (Tr. 231). Dr. Morgan noted a diagnosis of chronic neck and back pain, status post motor vehicle accident by history (Tr. 232). Dr. Morgan opined that Plaintiff had moderate limitation in his ability to walk, stand, sit, lift, or carry (Tr. 232).

On September 4, 2007 Dr. David Hicks performed a Physical Residual Functional Capacity Assessment and found that the Plaintiff could Occasionally lift 50 pounds, Frequently lift 25 pounds, stand and sit for about 6 hours in an 8 hour workday, and had no restrictions on his ability to push and/or pull (T. 237). He also found there was no postural limitations (T. 238), and no manipulative or visual limitations (T. 239) or environmental limitations (T. 240).  Dr. Hicks notes reveal that he did have treating or examining source statements. (T. 242).  Dr. Jerry Mann reviewed and concurred in Dr. Hicks' assessment. (T. 247).

Doin Dahlke, M.Ed. ATC/L, CFE., [2] performed a functional capacity evaluation on

---

[2]The court is unsure as to what the abbreviations listed above mean since no explanation or curriculum vitae was provided.

September 12, 2008, specifying that Plaintiff could perform sedentary work (Tr. 345-346). Mr. Dahlke also completed a September 12, 2008, Medical Source Statement positing that Plaintiff could not perform even sedentary work on a full-time basis (Tr. 342-345). The ALJ expressly considered the materials from Mr. Dahlke (Tr. 62). The ALJ explained that the statement from Mr. Dahlke was not consistent with the findings he reported in the functional capacity evaluation, and it was certainly not consistent with the findings of medical doctors in this case (Tr. 62).

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work- related activities on a sustained basis.  The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments." § 416.927(a)(2). *Tindell v. Barnhart*,  444 F.3d 1002, 1005 (C.A.8 (Iowa),2006).

Thus, in considering the evidence, including opinion evidence,  as an "other source," the ALJ was not bound by the treating source regulations but had "more discretion" and was "permitted to consider any inconsistencies found within the record*." Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir.2005) (evaluating therapist's assessment as "other medical evidence" rather than as a treating source opinion).  A nurse practitioner and therapists are not physicians, psychologists, or other acceptable medical sources as defined by the Regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir.2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable

impairment.' ").

The ALJ correctly discounted the Medical Source Statement of Mr. Dahlke, M.Ed., ATC/L, CFE, stating that his MSS was inconsistent with his own Functional Abilities Summary and with the statements of the medical doctors in the record.

## C: Subjective Complaints:

The Plaintiff made numerous complaints of subjective pain. An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

**(1) the claimant's daily activities;**

While the claimant testified that his daily activities were severely restricted the court notes that his treating physician authorized him to return to work. (T. 289). On January 6, 2006 the Plaintiff reported to a physical therapist that he performed routine activities in and outside the

house, shopped and was able to make his doctors appointments (T. 278). In his Function Report filed July 15, 2007 the Plaintiff indicated that he was able to take care of all his personal care (T. 141), could do cleaning, laundry and mowing (T. 142), that he got outside everyday, was able to drive a car and shop. (T. 143) These capabilities were still the same in November 2007 when the Plaintiff completed another Function Report (T. 160-167). The abilities to perform the above are some indication that the Plaintiff's pain is not disabling or as sever as he contends. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Moreover, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805. Cf. *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir.2005).

**(2) the duration, frequency, and intensity of the pain;**

The ALJ pointed out that the Plaintiff testified at the hearing that he could not lift anything but could lift a gallon of milk. The ALJ noted that on July 15, 2007 the Plaintiff indicated he could not lift more that 15-20 pounds (T. 147). On September 4, 2007 Dr. David Hicks performed a Physical Residual Functional Capacity Assessment and found that the Plaintiff could Occasionally lift 50 pounds, Frequently lift 25 pounds. In 2006 Dr. Capocelli

concurred with the FCE that had been performed on the Plaintiff that he could return to work as long as he did not lift more than 40 pounds. In June 2006 Dr. Kale recommended a pedometer and a 10,000 step walking program goal (Tr. 212, 219-220). There was no indication that the Plaintiff sought consistent treatment between June 2006 and December 2008. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

      **(3) dosage, effectiveness, and side effects of medication;**

On January 9, 2006 the Plaintiff reported that he does "not take the narcotic pain medications he was taking except only in cases of severe pain which is not controlled by Tylenol. On May 16, 2008, when the Plaintiff was admitted to Sparks Regional Medical Center for a ureteral stone he indicated that he was not on any medication or had any prescriptions. (T. 307). Robert Kale, M.D., reported in June 2006 that Plaintiff was doing well on his current analgesic regimen and his mood was significantly improved (Tr. 212, 219-220). By all accounts it appears that the Plaintiff's pain was controlled with medication. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006)

      **(4) precipitating and aggravating factors; and**

The precipitating factor was that Plaintiff was in a June 25, 2005, motor vehicle accident. (Tr. 60, 259). The ALJ noted that all of the medical evidence showed that any injury was appropriately treated and that there were no aggravating factors.

**(5) functional restrictions**

Functional restrictions were placed on the Plaintiff by the Plaintiff's treating physicians and noted in the ALJ's RFC.

The court defers to the ALJ's credibility determination, especially where the testimony appears to indicate that plaintiff gave contradictory answers. *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). The ALJ properly considered the Polaski factors and set forth appropriate reasons for discounting the Plaintiff's subjective allegations of pain.

**D. Vocational Expert Testimony:**

The ALJ presented hypothetical questions to the VE which included the Plaintiff's RFC (T. 44-46) and he then relied on vocational expert testimony in making his step five decision. The vocational expert identified light occupations that an individual with Plaintiff's vocational profile, and the specified exertional and nonexertional functional limitations could perform: small product assembler (DOT # 706.684-022; 1,500 Arkansas; 7,400 nation); machine tender (DOT # 524.685-038; 2,100 Arkansas; 122,300 nation); and poultry eviscerator (DOT # 525.687-074; 4,900 Arkansas; 45,500 nation) (Tr. 45, 63).

A vocational expert's response to a hypothetical question provides substantial evidence where the hypothetical sets forth the claimant's impairments with reasonable precision. See *Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992). The hypothetical question included only those impairments/limitations accepted as true. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th

Cir. 2006); *Long*, 108 F.3d at 188; *Onstad v. Shalala*, 999 F.2d 1232, 1234-35 (8th Cir. 1993). The ALJ carried the burden of showing that a significant number of jobs existed that Plaintiff could perform. Long, 108 F.3d at 188 (burden met by relying on vocational expert testimony to establish whether other jobs exist - whether number is significant is left to judge's common sense); *see also Pickney v. Chater*, 986 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence). The ALJ denied Plaintiff's application at step five of the sequential evaluation process (Tr. 63-64). See Clay v. Barnhart, 417 F.3d 922, 927, 931 (8th Cir. 2005) (161,000 assembly jobs in nation, and 2,000 in state supported a finding that a significant number of jobs would be available even if other jobs disregarded).

V.    **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this July 1, 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE